# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CHARLES SCHWAB & CO., INC.,
        *Plaintiff,*

v.

CHERYL M. DEBICKERO;
CHRISTOPHER W. WILSON; REBECCA
L. WILSON; ROBERTA M. WILSON,
   *Defendants-cross-defendants -*
             *Appellees,*

KATHERINE CHANDLER,
    *Defendant-cross-defendant*
           *Appellant.*

No. 07-15261

D.C. No.
CV-06-00119-FJM

OPINION

Appeal from the United States District Court
for the District of Arizona
Frederick J. Martone, District Judge, Presiding

Argued and Submitted
October 23, 2008—San Francisco, California

Filed January 22, 2010

Before: Glenn L. Archer, Jr.,* Richard R. Clifton, and
Milan D. Smith, Jr., Circuit Judges.**

---

*The Honorable Glenn L. Archer, Jr., United States Circuit Judge for
the Federal Circuit, sitting by designation.

**This case was argued and submitted to a panel that included Circuit
Judge Melvin Brunetti, who recently passed away. Following Judge Bru-
netti's death, Judge M. Smith was drawn by lot to replace Judge Brunetti.
Judge M. Smith has read the briefs, reviewed the record, and listened to
the oral argument.

1339

Per Curiam Opinion

**COUNSEL**

Scott Blair, Blair Law Firm, PLC, Scottsdale, Arizona, and Robert A. Olson (argued), Greines Martin Stein & Richland, LLP, Los Angeles, California, for appellant Chandler.

Jerome K. Elwell and J. Brent Welker (argued), Warner Angle Hallam Jackson & Formanek PLC, Phoenix, Arizona, for appellees Debickero, et al.

## OPINION

PER CURIAM:[1]

This interpleader action involves a dispute over the ownership of an individual retirement account established by decedent Wayne Wilson and held by Charles Schwab & Company ("Schwab"). Katherine Chandler, Wilson's surviving spouse, appeals the grant of summary judgment in favor of the named beneficiaries of the Schwab IRA, Wilson's four adult children from a previous marriage. The district court determined that the surviving spouse protections in the Employee Retirement Income Security Act of 1974 ("ERISA"), 88 Stat. 832, as amended, 29 U.S.C. § 1001 *et seq.*, do not apply to the Schwab IRA even though some of the funds originated from an ERISA-protected pension plan, and that the Internal Revenue Code, 26 U.S.C. § 1 *et seq.*, also does not impose automatic surviving spouse rights on IRAs similar to those protections afforded under ERISA. We affirm.

## I

The essential facts are undisputed. Wayne Wilson was employed with Siemens/GTE until 1992. During that time, he participated in the company's 401(k) plan. In 1994, while employed with another company, Wilson elected to close his Siemens 401(k) and take a lump sum distribution, which he rolled over into an IRA with Smith Barney. Between 1995 and 1999, Wilson also transferred or rolled over funds into the Smith Barney IRA from other accounts and retirement plans.

After having lived together since 1990, Wilson and Katherine Chandler married in December 2000. In June 2002, Wilson opened another IRA, this time with Charles Schwab,

---

[1]This opinion was assigned to and primarily prepared by Judge Brunetti. Regrettably, Judge Brunetti passed away before it was finalized, but he should be recognized as the principal author.

which he funded by transferring approximately half the proceeds from the Smith Barney IRA. Despite his marriage to Chandler, Wilson advised Schwab he was divorced and named as the primary beneficiaries his four adult children from a previous marriage—Christopher W. Wilson, Roberta M. Wilson, Cheryl M. Debickero, and Rebecca L. Wilson (the "Beneficiaries").

On August 9, 2005, at the age of 65, Wilson died unexpectedly in a flash flood. He was survived by Chandler and his four children, who asserted competing rights to the funds in the Schwab IRA. Faced with that dispute, Schwab filed this interpleader action naming Chandler and the Beneficiaries as defendants. Chandler then filed a cross-claim against the Beneficiaries asserting that under either ERISA or the Internal Revenue Code she was entitled to the funds as Wilson's surviving spouse. Chandler also asserted a state law claim based on the theory of constructive trust.

On cross-motions for summary judgment, the district court ruled in favor of the Beneficiaries as to Chandler's federal claims. Finding it significant that Wilson and Chandler were not married until several years after Wilson ended his participation in his employer-sponsored 401(k) plan, the court rejected Chandler's argument that ERISA's surviving spouse protections continued to apply even after the funds were rolled over into an independently managed IRA. It also rejected Chandler's alternative argument that the Internal Revenue Code should be construed to impose on such IRAs surviving spouse protections identical to those found in ERISA. In subsequent rulings, the court declined to exercise supplemental jurisdiction over the state law claim and granted the Beneficiaries' request for release of the interpleader funds. This appeal followed.

## II

A district court's decision to grant partial summary judgment is reviewed *de novo*. *United States v. $100,348 in U.S.*

*Currency*, 354 F.3d 1110, 1116 (9th Cir. 2004). This court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004).

**[1]** Chandler's primary claim to automatic surviving spouse benefits is based in section 205 of ERISA, 29 U.S.C. § 1055, as amended by the Retirement Equity Act of 1984 (REA), Pub. L. No. 98-397, 98 Stat. 1429. It requires that "in the case of a vested participant who dies before the annuity starting date and who has a surviving spouse, a qualified preretirement survivor annuity shall be provided to the surviving spouse of such participant." 29 U.S.C. § 1055(a)(2). In order to receive the survivor annuity, the surviving spouse must have been married to the participant for at least one year from the earlier of the participant's annuity starting date or the date of the participant's death. *Id.* § 1055(f)(1). Although the plan participant may elect to waive the survivor annuity and designate another beneficiary, it "shall not take effect unless . . . the spouse of the participant consents in writing to such election." *Id.* § 1055(c)(2)(A); *Hamilton v. Wash. State Plumbing & Pipefitting Indus. Pension Plan*, 433 F.3d 1091, 1095 (9th Cir. 2006).

Of course, ERISA's surviving spouse provisions may apply only when an ERISA-qualified plan is implicated. It is undisputed that the Siemens 401(k) plan in which Wilson participated was covered by ERISA, and that Chandler, as Wilson's surviving spouse at the time of his death, never consented to the designation of another beneficiary. But this alone does not entitle her to automatic surviving spouse benefits under ERISA. Although Wilson was at one time a participant in an employee benefit plan subject to ERISA's protections and limitations, ERISA ceased to apply when, long before his marriage to Chandler, Wilson terminated his participation in

the employee benefit plan and transferred the proceeds to an independent IRA.

**[2]** "Congress enacted ERISA to ensure the proper administration of employee benefit plans, including pension plans, both during the years of an employee's active service and after retirement." *Hamilton*, 433 F.3d at 1095. That scope may be substantial, but it is also inherently limited. By ERISA's own terms, employee benefit protections apply only to an "employee benefit plan" that is "established or maintained" by an employer, employee organization, or both. 29 U.S.C. § 1003(a). The term "employee benefit plan" or "plan" is likewise defined as an employee "welfare plan" or "pension plan" that is "established or maintained by an employer or by an employee organization, or by both." *Id.* § 1002(1), (2)(A), (3). The Schwab IRA at issue here was established and maintained by Wilson personally and not by his employer or any employee organization, and thus it falls outside these basic coverage limits.

**[3]** It is beside the point that the IRA proceeds originated as employee benefits within an ERISA-qualified plan. Section 1003(a) delineates ERISA's coverage not in terms of "employee benefits," but in terms of "employee benefit *plans*." *See Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 7-8 (1987). "The focus of the statute thus is on the administrative integrity of benefit plans—which presumes that some type of administrative activity is taking place." *Id.* at 15. "Only 'plans' involve administrative activity potentially subject to employer abuse." *Id.* at 16. With respect to the Schwab IRA, there was no employer oversight, no ongoing employer commitment, nor any potential for employer abuse. On the contrary, the Schwab IRA was established and maintained by Wilson years after he left his employment with Siemens and terminated his participation in the Siemens 401(k).

**[4]** If that were not enough, IRAs are specifically excluded from ERISA's coverage. Consistent with the statutory defini-

tions and coverage limits discussed above, federal regulations clarify that so long as the involvement of an employer or employee organization is strictly limited, "the terms 'employee pension benefit plan' and 'pension plan' [as defined in § 1002(2)(A)] shall not include an individual retirement account described in section 408(a) of the [Internal Revenue] Code . . . ."[2] 29 C.F.R. § 2510.3-2(d)(1). Moreover, ERISA itself excludes IRAs categorically from the participation and vesting provisions of Part 2 of Title I, 29 U.S.C. §§ 1051-1061, which includes the joint and survivor annuity requirements of § 1055 at issue here. "This part shall apply to any employee benefit plan described in section 1003(a) of this title . . . other than . . . an individual retirement account or annuity described in section 408 of Title 26 . . . ." 29 U.S.C. § 1051(6); *see Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1231 (9th Cir. 2000).[3]

**[5]** Chandler would have us interpret these IRA exclusions more narrowly. She submits that § 1051(6), "properly construed, excludes only self-funded individual retirement accounts from ERISA," and that the Schwab IRA does not qualify because it contains funds that originated as employer contributions to Wilson's former 401(k). Section 1051(6) itself contains no such language limiting its application to self-funded IRAs, thus Chandler relies instead on the limitations on employer involvement enumerated in 29 C.F.R. § 2510.3-2(d)(1). That regulation excludes IRAs from the terms "employee pension benefit plan" and "pension plan" provided that—

> (i) *No contributions are made by the employer* or employee association;

---

[2]The Code defines an "individual retirement account" as "a trust created or organized in the United States for the exclusive benefit of an individual or his beneficiaries," provided it meets several enumerated requirements. 26 U.S.C. § 408(a).

[3]Incidentally, IRAs are also excluded from Part 3 of Title I, 29 U.S.C. §§ 1081-1085. *See id.* § 1081(a)(7).

(ii) Participation is completely voluntary for employees or members;

(iii) The sole involvement of the employer or employee organization is without endorsement to permit the sponsor to publicize the program to employees or members, to collect contributions through payroll deductions or dues checkoffs and to remit them to the sponsor; and

(iv) The employer or employee organization receives no consideration in the form of cash or otherwise, other than reasonable compensation for services actually rendered in connection with payroll deductions or dues checkoffs.

*Id.* (emphasis added). Chandler also cites *Cline*, in which we stated: "Under this regulation, certain IRAs which have little or no employer involvement, *including no employer contributions*, are excluded from the definition of 'employee pension benefit plan' and thereby completely excluded from ERISA coverage. Other IRAs fall within the definition . . . and thereby come within the ken of ERISA." 200 F.3d at 1230 (emphasis added). While *Cline* involved direct employer contributions to an IRA that plainly fell within the meaning of subpart (i), Chandler submits that no distinction should be made where employer contributions were made to an ERISA-qualified pension plan and rolled over by the employee into an independently established IRA. We disagree.

[6] Chandler's interpretation of § 2510.3-2(d)(1) cannot be squared with the plain language and purpose of the regulation, or with the statutory scheme to which it relates. Read in its proper context, the phrase "contributions are made by the employer" encompasses only direct employer contributions to the IRA in question. Rollover contributions made by the account holder do not qualify, even if "the ultimate source of the rolled-over funds was a plan established and maintained

by the [account holder's] former employer." *In re Rayl*, 299 B.R. 465, 467 (Bankr. S.D. Ohio 2003).

**[7]** The stated purpose of the regulation is to "clarif[y] the limits of the defined terms 'employee pension benefit plan' and 'pension plan' for purposes of title I of the Act . . . by identifying certain specific plans, funds and programs which do not constitute employee pension benefit plans for those purposes." 29 C.F.R. § 2510.3-2(a). Subsection (d)(1) accordingly delineates ERISA's coverage of IRAs by setting limits not on the ultimate origin of the proceeds, but on an employer or employee association's degree of involvement in the IRA itself. Construed in context of the regulation as a whole, rather than in isolation as Chandler would have it, the conditions enumerated in subparts (i)-(iv) make sense only if read as describing the IRA in question *i.e.*, "the terms 'employee pension benefit plan' and 'pension plan' shall not include an individual retirement account . . . provided that—(i) No contributions [to the IRA] are made by the employer . . . ; . . . (iii) The sole involvement of the employer [in the IRA] is without endorsement . . . to collect contributions through payroll deductions . . . ;" and so forth. *Id*. § 2510.3-2(d)(1). Thus, what is relevant under subpart (i) is not the original source of the funds, but how they found their way into the IRA. The regulation refers to IRA contributions in the present tense ("No contributions *are made* by the employer . . ."); past contributions that were made by a former employer to a different retirement plan before the IRA was even established therefore do not qualify. *See Grimo v. Blue Cross/Blue Shield, of Vermont*, 34 F.3d 148, 153 (2d Cir. 1994). Because all contributions to the Schwab IRA were made by Wilson, not by his employer, the exception in § 2510.3-2(d)(1)(i) is inapplicable.

Considering § 2510.3-2(d)(1)(i) in light of the statutory limits and definitions that the regulation is intended to clarify reinforces this interpretation. As already noted, the terms "employee pension benefit plan" and "pension plan" are statutorily defined as a plan, fund, or program that is "established

or maintained by an employer or by an employee organization, or by both." 29 U.S.C. § 1002(2)(A). The "established or maintained" requirement "appears designed to ensure that the plan is part of an employment relationship . . . . [and] seeks to ascertain whether the plan is part of an employment relationship by looking at the degree of participation by the employer in the establishment or maintenance of the plan." *Peckham v. Gem State Mut. of Utah*, 964 F.2d 1043, 1049 (10th Cir. 1992). It can hardly be argued that evidence of contributions made sometime in the past by a former employer to an employee's since-closed ERISA-qualified pension plan demonstrates that an employer has "maintained" the employee's rollover IRA. "[A] past contribution alone does not indicate that an ERISA plan has been 'maintained,' " *Grimo*, 34 F.3d at 153, let alone a past contribution to a different account altogether.

[8] Chandler's argument that § 2510.3-2(d)(1) is relevant to the interpretation and applicability of § 1051(6) is also false. Even if Chandler were correct that the regulatory IRA exclusion in § 2510.3-2(d)(1) does not apply to IRAs containing rollover funds from an employer-sponsored plan, the statutory IRA exclusion in § 1051(6) would still operate to exempt the Schwab IRA from the surviving spouse protections in § 1055. By its own terms, § 2510.3-2(d)(1) pertains only to whether an IRA qualifies as an "employee pension benefit plan" or "pension plan" for purposes of Title I of ERISA generally— or more specifically, §§ 1002(2)(A) and 1003(a). *See Cline*, 200 F.3d at 1230-31. If an IRA were to qualify, it would be generally subject to ERISA. But "[h]aving determined that the [IRA] is an 'employee pension benefit plan,' the analysis turns to the text of the statute to determine which parts of ERISA apply." *Id.* at 1230. We thus turn to § 1051, which governs the applicability of Part 2 of Title I, §§ 1051-1061, and provides that "[t]his part shall apply to any employee benefit plan described in section 1003(a) of this title . . . other than . . . an individual retirement account or annuity described in section 408 of Title 26 . . . ." 29 U.S.C. § 1051(6). As we

applied this provision in *Cline*, § 1051(6) categorically exempts IRAs from the participation and vesting provisions of §§ 1051-1061, even if the IRA in question is not otherwise exempt from ERISA under § 2510.3-2(d)(1) because of employer contributions made directly to the plan. 200 F.3d at 1230-31. Thus, because the Schwab IRA is subject to the statutory exclusion in § 1051(6), Chandler's claim to automatic surviving spouse benefits under § 1055 of ERISA is without merit.

## III

Even though ERISA's applicability terminated once Wilson's qualified pension funds were rolled over into an independently managed IRA, Chandler argues in the alternative that the funds are nonetheless subject to "mirror-like" automatic surviving spouse requirements under § 401(a)(11) of the Internal Revenue Code, which were added following the 1984 enactment of REA. *See* Pub. L. No. 98-397, 98 Stat. 1440. Similar to § 1055(a) of ERISA, the Code provides that "in the case of a vested participant who dies before the annuity starting date and who has a surviving spouse" to whom the participant has been married for at least one year, a plan to which § 401(a)(11) applies "shall not constitute a qualified trust under this section unless . . . a qualified preretirement survivor annuity is provided to the surviving spouse of such participant." 26 U.S.C. § 401(a)(11)(A)(ii).

**[9]** In arguing that § 401(a)(11) applies to the Schwab IRA, Chandler primarily relies on § 408 of the Code, which governs IRAs. It provides in relevant part: "Under regulations prescribed by the Secretary, rules similar to the rules of section 401(a)(9) and the incidental death benefit requirements of section 401(a) shall apply to the distribution of the entire interest of an individual for whose benefit the trust is maintained." 26 U.S.C. § 408(a)(6). As Chandler interprets this language, "the statute requires the Secretary to prescribe 'regulations' that incorporate both 'rules similar to the rules of

401(a)(9)' and 'the incidental death benefit requirements of section 401(a)' (which the Secretary has yet to do)." In other words, Chandler reads the phrase "rules similar to" as modifying only "the rules of section 401(a)(9)," such that "the incidental death benefit requirements of section 401(a)" must be incorporated in their entirety, especially including the survivor annuity requirements of § 401(a)(11). We disagree.

**[10]** Chandler's fractured reading of § 408(a)(6) is untenable when construed in light of its introductory clause. If Congress had intended to impose on IRAs the incidental death benefit requirements of § 401(a) in their entirety, it could have easily said so without requiring "regulations prescribed by the Secretary." By instead involving the Secretary as an intermediary, Congress plainly had something else in mind for IRAs—namely, "*rules similar to* . . . the incidental death benefit requirements of section 401(a)," 26 U.S.C. § 408(a)(6) (emphasis added). In exercising this authority granted by § 408(a)(6), the Secretary has not imposed on IRAs any automatic surviving spouse rights. Treasury Regulation § 1.408-8 specifically addresses "the distribution rules for IRAs provided in section[ ] 408(a)(6)," but makes no mention of § 401(a)(11) or its survivor annuity requirements. 26 C.F.R. § 1.408-8. The regulations instead leave the designation of beneficiaries to the individual account holder. They mandate that upon death, distribution must be made to the "beneficiaries," which is defined to include "the estate of the individual, dependents of the individual, and *any person designated* by the individual to share in the benefits of the account after the death of the individual." 26 C.F.R. § 1.408-2(b)(8) (emphasis added). Chandler's reliance on § 408(a)(6) to override Wilson's designation of his children as the beneficiaries of the Schwab IRA is therefore misplaced.

**[11]** Chandler alternatively contends, however, that § 401(a)(11) is applicable to IRAs of its own accord. The statute provides: "This paragraph shall apply to—(i) any defined benefit plan, (ii) any defined contribution plan which is sub-

ject to the funding standards of section 412, and (iii) any participant under any other defined contribution plan" that meets certain conditions. 26 U.S.C. § 401(a)(11)(B); *see also* 26 C.F.R. § 1.401(a)-20. We disagree, however, that an IRA individually established and maintained like the Schwab IRA in this case qualifies as a plan within the coverage of these provisions. Section 401(a)(11)(A) speaks to the necessary requirements of a "qualified trust," which is defined at the outset of the statute as including only "a stock bonus, pension, or profit-sharing plan *of an employer* for the exclusive benefit of his employees or their beneficiaries." 26 U.S.C. § 401(a) (emphasis added). The Schwab IRA has no such employer sponsorship. Moreover, the accompanying regulations expressly exclude IRAs from the coverage of § 401(a)(11). As if intending to harmonize the treatment of IRAs under the Code with their exclusion from § 1055 of ERISA, the Treasury Regulations provide:

> The requirements set forth in section 401(a)(11) apply to other employee benefit plans that are covered by applicable provisions under Title I of [ERISA]. For purposes of applying the regulations under sections 401(a)(11) and 417, plans subject to ERISA section 205 [26 U.S.C. § 1055] are treated as if they were described in section 401(a). For example, to the extent that [§ 1055] covers section 403(b) contracts and custodial accounts they are treated as section 401(a) plans. *Individual retirement plans (IRAs)*, including IRAs to which contributions are made under simplified employee pensions described in section 408(k) and IRAs that are treated as plans subject to Title I, *are not subject to these requirements*.

26 C.F.R. § 1.401(a)-20(A-3)(d) (emphasis added). Thus, under both § 401(a) and the accompanying regulations, there is no basis for imposing on the Schwab IRA the automatic survivor annuity requirements of § 401(a)(11) and overriding

the beneficiary designations rightfully made by Wilson in establishing the account.

## IV

For the aforementioned reasons, we reject Chandler's claims that she is entitled to automatic surviving spouse rights in her husband's Schwab IRA under either ERISA or the Internal Revenue Code, and we affirm the district court's grant of summary judgment to the Beneficiaries.

**AFFIRMED.**