**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

CAROLYN LAZAR, a citizen of
Arizona,
  *Plaintiff-Counter-Defendant-Cross-
Defendant-Appellant*,

v.

MARK G. KRONCKE, in his capacity
as Administrator of the Estate of
George Thomas Kroncke, a citizen
of California,
  *Defendant-Counter-Defendant-
Appellee*,

and

CHARLES SCHWAB & CO., INC., a
California corporation,
  *Defendant-Counter-Claimant-Cross-
Claimant.*

No. 15-15078

D.C. No.
2:14-cv-01511-
DLR

OPINION

Appeal from the United States District Court
for the District of Arizona
Douglas L. Rayes, District Judge, Presiding

Argued and Submitted February 14, 2017
San Francisco, California

Filed July 14, 2017

Before:  Eugene E. Siler, Jr.,[*] A. Wallace Tashima,
and Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Siler

## SUMMARY[**]

**Revocation-on-Divorce Statute / Contracts Clause**

The panel affirmed the district court's dismissal of a constitutional challenge to the application of Arizona's revocation-on-divorce statute in the allocation of the proceeds of the plaintiff's ex-husband's individual retirement account following his death.

The panel affirmed the district court's conclusion that an Arizona state court would disregard the IRA's choice of law provision and instead apply Arizona's revocation-on-divorce statute.

The panel held that the application of the Arizona statute was not preempted by the Employee Retirement Income Security Act or other federal statutes and regulations governing IRAs.

---

[*] The Honorable Eugene E. Siler, Jr., United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

The panel reversed the district court's ruling that the plaintiff lacked standing to bring her constitutional challenge under the Contracts Clause because, as a designated beneficiary, she possessed only an expectation interest in the IRA. The panel held that the plaintiff had standing because Arizona's revocation-on-divorce statute operated to extinguish her valid expectancy interest in the IRA. This injury was actual, concrete, and particularized, and a ruling in the plaintiff's favor would redress her injury.

The panel held that the Contracts Clause challenge nonetheless failed on the merits. The revocation-on-divorce statute was enacted after the IRA was established. Agreeing with the Tenth Circuit, the panel concluded that this change in state law did not operate as a substantial impairment of a contractual relationship because the plaintiff never possessed a vested contractual right.

The panel held that the California district court in which the action was filed did not abuse its discretion in transferring the case to Arizona based on a lack of personal jurisdiction over the estate of the plaintiff's ex-husband. The panel also concluded that the plaintiff waived a dormant Commerce Clause claim, and the district court did not abuse its discretion in staying discovery.

**COUNSEL**

Josh A. Lazar (argued), The Geraci Law Firm, Irvine, California, for Plaintiff-Counter-Defendant-Cross-Defendant-Appellant.

Timothy James Ryan (argued), Frazer Ryan Goldberg & Arnold LLP, Phoenix, Arizona; Jared M. Toffer, Finlayson

Toffer Roosevelt & Lilly LLP, Irvine, California; Charles W. Wirken, Gust Rosenfeld PLC, Phoenix, Arizona; for Defendant-Counter-Defendant-Appellee.

## OPINION

SILER, Senior Circuit Judge:

Plaintiff Carolyn Lazar appeals the district court's grant of Defendant Mark G. Kroncke's motion to dismiss her second amended answer and cross-claim ("SAACC"). For the reasons set forth below, we reverse the district court's ruling that Lazar lacks standing to bring her constitutional challenge under the Contracts Clause, but nonetheless affirm the judgment finding that Lazar's constitutional challenge fails and affirming the district court's other rulings.

## FACTUAL AND PROCEDURAL BACKGROUND

Lazar was married to George Thomas Kroncke ("Decedent") when he established an individual retirement account ("IRA") in 1992 with Charles Schwab & Co., Inc. ("Schwab"). The Decedent named Lazar as the IRA beneficiary. Lazar and the Decedent divorced in 2008 while domiciled in Arizona. Before Decedent's death in 2012, he neither removed nor reaffirmed Lazar as the IRA beneficiary. After the Decedent's death, Kroncke, as administrator of his father's estate (the "Estate"), made a demand on Schwab for the IRA proceeds on the basis of Arizona's revocation-on-divorce ("ROD") statute, A.R.S. § 14-2804. Schwab froze the IRA pending judicial resolution.

Lazar filed this action in the Central District of California against Schwab for breach of contract and against

the Estate for declaratory relief. In her first amended complaint ("FAC"), Lazar challenged the constitutionality under the Contracts Clause of applying Arizona's ROD statute retroactively because the IRA was established in 1992 and the ROD statute was enacted in 1995.

Schwab filed a counterclaim against both parties under Federal Rule of Civil Procedure 22 seeking to liquidate the securities held by the IRA and interplead those funds into the district court. The California district court granted Schwab's motion to be dismissed as an interpleader but ordered it to continue to hold and not liquidate the securities in the IRA.

The district court dismissed Lazar's FAC on the basis that it did not state a claim under the Contracts Clause because Lazar had no vested interest in the IRA. The district court permitted Lazar to file her SAACC. The SAACC added a claim that the IRA statute and the regulations promulgated thereunder preempted Arizona's ROD statute to the extent it retroactively revokes IRA beneficiary designations. The district court dismissed Lazar's SAACC on the grounds that it lacked personal jurisdiction over the Estate and ordered the case transferred to the District of Arizona pursuant to 28 U.S.C. § 1406(a).

After the case was transferred to the District of Arizona, the district court granted the Estate's renewed motion to dismiss, holding that the pertinent IRA statutes and regulations did not preempt the operation of Arizona's ROD statute, that the prior decision on the Contracts Clause was the law of the case and the court would have reached the same outcome for the same reasons, and that the Commerce Clause argument need not be considered since it was not included in the SAACC. The district court stayed the distribution of IRA proceeds pending appeal.

## STANDARD OF REVIEW

We review the dismissal of the SAACC de novo. *See Syed v. M-I, LLC*, 853 F.3d 492, 499 (9th Cir. 2017). A dismissal for lack of personal jurisdiction is reviewed de novo. *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1128 (9th Cir. 2003). Transfer orders pursuant to 28 U.S.C. § 1406(a) are reviewed for an abuse of discretion. *King v. Russell*, 963 F.2d 1301, 1304 (9th Cir.1992). Stays of discovery pending resolution of the motion to dismiss are also reviewed for an abuse of discretion. *Alaska Cargo Transp., Inc. v. Alaska R.R. Corp.*, 5 F.3d 378, 383 (9th Cir. 1993).

## DISCUSSION

## I. Enforceability of the IRA's Choice of Law Provision under Arizona Law

Two documents govern the IRA: the Schwab Individual Retirement Plan ("the Plan") and the Schwab IRA Application ("the Adoption Agreement"). The Plan sets forth the rights and responsibilities of the account holder and Schwab, and the Adoption Agreement designates beneficiaries. The Plan contains a choice-of-law provision specifying that:

> The Plan is intended to qualify as an individual retirement account plan under [Internal Revenue] Code Section 408. Accordingly, the Plan shall be governed by and interpreted under the laws of the United States, and, to the extent such laws do not apply, shall be governed by and interpreted under the laws of the State of California.

The Adoption Agreement does not itself contain a choice-of-law provision but does state "I hereby adopt the Charles Schwab & Co., Inc., INDIVIDUAL RETIREMENT PLAN ('the Plan') which is made part of this Agreement . . . ." The district court did not resolve whether the choice-of-law provision governed both the Plan and the Adoption Agreement, instead concluding that the choice-of-law provision was unenforceable under Arizona law.

The district court began from the proposition that "[a] federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001). Arizona generally follows the Restatement (Second) of Conflict of Laws ("Restatement") to assess the validity of choice-of-law provisions. *See Swanson v. Image Bank, Inc.*, 77 P.3d 439, 441 (Ariz. 2003). The relevant Restatement section provides that the choice-of-law provision in a contract governs "if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." Restatement (Second) of Conflict of Laws § 187 (1971). But, the same section also provides a caveat—the law of the state chosen by the contracting parties will not be applied if "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties." *Ibid*.

For instruments governing donative transfers, Arizona has deviated from the Restatement's choice-of-law analysis as set forth at Arizona Revised Statute § 14-2703: "The meaning and legal effect of a governing instrument is

determined by the local law of the state selected in the governing instrument unless the application of that law . . . is contrary to any other public policy of this state otherwise applicable to the disposition." An IRA is a "governing instrument" under the statute. A.R.S. § 14-1201(22).

Lazar contends that the district court erred by not conducting a *Swanson* Restatement analysis and instead basing its decision on the Arizona statute. She argues that because the parties could have resolved this issue by contract, subsection 187(1) of the Restatement is satisfied and that concludes the analysis. But the Restatement expressly recognizes that "[t]he chosen law should not be applied without regard for the interests of the state which would be the state of the applicable law with respect to the particular issue involved in the absence of an effective choice by the parties." § 187 cmt. g. We cannot conclude that an Arizona court would ignore an Arizona statute directly on point in favor of a Restatement analysis, so Lazar's argument to that effect is unavailing.

The purpose of Arizona's ROD statute is to "achiev[e] the social goal of implementing [a person's] probable intention in the wake of a divorce." *In re Estate of Dobert*, 963 P.2d 327, 333 (Ariz. Ct. App. 1998). To effectuate this purpose, Arizona automatically revokes all dispositions to a former spouse upon divorce and requires a person intending to retain such dispositions to re-designate the former spouse in writing and in compliance with the instrument's formalities. A.R.S. § 14-2804; *In re Estate of Lamparella*, 109 P.3d 959, 965–66 (Ariz. Ct. App. 2005). This contrasts with California's approach, under which divorce establishes a presumption of intent to revoke which can be rebutted by clear and convincing evidence. Cal. Prob. Code § 5600. Thus, California allows inquiry into the very extrinsic

manifestations of contrary intent which Arizona seeks to foreclose. Arizona's interest in its ROD statute is not merely to effectuate a donor's probable intent, but also to provide clarity and avoid litigation. Even the statutory exception demonstrates this desire for clarity, because doing so requires either an express provision ex-ante that the designation will apply in the event of divorce or an ex-post reaffirmation. A.R.S. § 14-2804(A).

Lazar challenges the strength of Arizona's interest because a donor can override the operation of Arizona's ROD statute. She draws an analogy to *Cardon v. Cotton Lane Holdings, Inc.*, where the Arizona Supreme Court allowed California law to govern a deed of trust and preclude a deficiency judgment which would have been available under Arizona law because in both states it was legal to contract away the availability of a deficiency judgment. 841 P.2d 198, 202–04 (Ariz. 1992). However, *Cardon* did not involve an Arizona statute specifying Arizona's intent to deviate from the Restatement and apply its own law to cases involving donative transfers. Lazar also stresses that Arizona's ROD statute allows for parties to avoid its effects, but this can occur only with affirmative and written evidence of intent without recourse to extrinsic evidence.

The Plan's choice-of-law provision is not an "express term" for the purposes of Arizona's ROD statute. A.R.S. § 14-2804(A). The reference to "express terms" in the ROD statute pertains only to the effect on an instrument wrought by divorce, so any "express terms" removing an instrument from the scope of the ROD statute must address the effect of divorce. *Ibid*. ("Except as provided by the express terms of a . . . contract relating to the division of the marital estate made between a divorced couple . . ."). The Plan's choice-of-law provision was silent in this regard. The district court

thus correctly determined that an Arizona state court would disregard the choice-of-law provision in the Plan and instead apply Arizona's ROD statute.

## II. Conflict Preemption

Lazar claims that application of Arizona's ROD statute is preempted by federal statutes and regulations governing IRAs. None of these statutes or regulations contains an express preemption clause, but state law must nevertheless yield to federal law to the extent the laws conflict. *See Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). Federal regulations have the same preemptive effect as federal statutes. *See Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982). Because domestic relations and probate are areas of traditional state control, *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 581 (1979) (domestic relations); *Zschernig v. Miller*, 389 U.S. 429, 440 (1968) (probate), there is a presumption against preemption in such areas. *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 151 (2001).

The Plan states that it "is intended to qualify as an individual retirement account under Code Section 408," referring to 26 U.S.C. § 408—the section of the Internal Revenue Code creating IRAs. It is undisputed that IRAs are governed by federal law. The dispute is between Lazar's position that IRA regulations compel distribution to her even in the face of the ROD statute and the Estate's position that the regulations do not govern *who* must be paid the IRA proceeds but instead only dictate *how* those funds must be paid out for taxation purposes.

### a. Lazar's Definitional Argument Fails

In arguing that she is entitled to the IRA, Lazar first relies upon the Employee Retirement Income Security Act's ("ERISA's") definition of beneficiary: "[A] person designated by a participant, or by the terms of the employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). The second provision on which she relies is the IRA distribution rule:

> [A]n IRA is subject to the required minimum distribution rules provided in section 401(a)(9) [applicable to ERISA plans]. In order to satisfy section 401(a)(9) for purposes of determining required minimum distributions . . . the rules of [26 C.F.R.] §§ 1.401(a)(9)-1 through 1.401(a)(9)-9 and 1.401(a)(9)-6 for defined contribution plans must be applied, except as otherwise provided in this section.

26 C.F.R. § 1.408-8, Q&A-1(a). Lazar argues that this IRA distribution rule necessarily incorporates ERISA's definition of "beneficiary" any time it is used in the term "designated beneficiary."

Building upon this asserted equivalence, Lazar argues that IRA distribution rules demarcate the only two methods whereby someone can become a beneficiary: "[a]n individual may be designated as a beneficiary under the plan either by the terms of the [IRA] plan or, if the plan so provides, by an affirmative election by the [IRA's owner]. . . specifying the beneficiary." 26 C.F.R. § 1.401(a)(9)-4, Q&A-1(a). As provided in 26 C.F.R. § 1.408-8, Q&A-1(b), the ERISA language reading "employee" can be altered to read "IRA owner." Since the regulation describing the

procedures for making someone a designated beneficiary does not contemplate the operation of ROD statutes and she was designated as the beneficiary on the Plan documents, Lazar argues that this combination of statutes and regulations compels distribution to her.

The terms "beneficiary" and "designated beneficiary" cannot be conflated in this manner. Otherwise it would have been redundant to have a separate definition of designated beneficiary:

> A designated beneficiary is an individual who is designated as a beneficiary under the plan. An individual may be designated as a beneficiary under the plan either by the terms of the plan or, if the plan so provides, by an affirmative election by the [IRA owner] . . . specifying the beneficiary. . . . A designated beneficiary need not be specified by name in the plan or by the [IRA owner] to the plan in order to be a designated beneficiary so long as the individual who is to be the beneficiary is identifiable under the plan. . . . *The fact that an [IRA owner's] interest under the plan passes to a certain individual under a will or otherwise under applicable state law does not make that individual a designated beneficiary unless the individual is designated as a beneficiary under the plan.*

26 C.F.R. § 1.401(a)(9)-4, Q&A-1 (emphasis added). This definition contemplates that "designated beneficiary" demarcates a smaller class than does "beneficiary" for two reasons. First, only an individual can be a designated beneficiary, excluding any trust or estate from the status.

Second, an interest is allowed to pass under a will or through the operation of otherwise applicable state law to someone who is not a designated beneficiary, but such passage does not confer designated beneficiary status upon the recipient.

We thus find it clear that "beneficiary" and "designated beneficiary" are not interchangeable, a conclusion consistent with the preferential tax treatment provided to designated beneficiaries, such as avoiding application of the IRS's five-year distribution rule. *See* 26 C.F.R. § 1.401(a)(9)-8, Q&A-11; IRS Publication 590-B, Distributions from Individual Retirement Arrangements (IRAs) (*available at* http://www.irs.gov/pub/irs-pdf/p590b.pdf) at 10 ("The 5-year rule applies in all cases . . . where any beneficiary is not an individual (for example, the owner named his or her estate the beneficiary)."). Thus, the regulation Lazar cites as setting out the only ways an individual can become a "beneficiary" actually sets forth the ways someone can become a "designated beneficiary" eligible for preferential tax treatment. *See* 26 C.F.R. § 1.401(a)(9)-4 Q&A 1 (beginning by saying "an individual may be *designated* as the *beneficiary*") (emphasis added). This means the district court correctly concluded that "designated beneficiary" is a term-of-art and that the IRA distribution rules govern only *how* distributions will be treated for tax purposes and does not determine *who* is entitled to them.

Further support for our conclusion is found in the regulation listing as possible IRA beneficiaries "(except where the context indicates otherwise) the estate of the individual, dependents of the individual, and any person designated by the individual to share in the benefits of the account after the death of the individual." 26 C.F.R. 1.408-2(b)(8). Because an estate is a potential IRA beneficiary, an

IRA beneficiary need not be someone who qualifies as a "designated beneficiary" under ERISA.

Lazar argues that the district court erred by failing to consider the parenthetical "except where the context indicates otherwise" in § 1.408.2(b)(8) as a clear reference to the IRA Plan. She asserts that the terms of the Plan exclude the Estate as a beneficiary by defining beneficiary as "the person or persons designated from time to time by a Participant . . . to receive benefits by reason of the death of the Participant. . . ." It is difficult to see how the parenthetical "except where the context indicates otherwise" is a clear reference to the Plan when the word "plan" appears numerous times elsewhere in the same regulation. In any event, the terms of the Plan list the Estate as the default beneficiary in the absence of a valid beneficiary designation and so do not exclude it.

### b. Lazar's Reliance on ERISA and FEGLIA Cases Is Misplaced

In support of her preemption claim, Lazar cites *Egelhoff*, where the Supreme Court ruled that Washington's ROD statute could not be applied to ERISA-qualified plans. *Egelhoff*, 532 U.S. at 150. The Court held that the ROD statute was preempted since it had a "connection with" ERISA plans by interfering with the statutory requirements that ERISA "plans be administered, and benefits be paid, in accordance with plan documents." *Ibid.* The Court has also held that a divorce decree is ineffective to revoke an ex-wife's interest as the named beneficiary of an ERISA plan. *See Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 288 (2009). It also conducted a similar analysis when it considered a Federal Employee Group Life Insurance ("FEGLIA") policy, ruling that a Virginia statute permitting a current wife to recover funds distributed to an

ex-wife was preempted as an obstacle to Congress's intent to establish a clear procedure for designating a beneficiary. *See Hillman v. Maretta*, 133 S. Ct. 1943, 1953 (2013). *Free v. Bland*, another case upon which Lazar relies, is inapposite since the federal savings bonds at issue there involved regulations establishing a right of survivorship, which is not the case for IRAs. *See* 369 U.S. 663, 667–68 (1962).

It does not follow from these cases that IRA plans should be treated in the same manner. Both ERISA and FEGLIA include express preemption clauses, *see* 29 U.S.C. § 1144(a) (ERISA) and 5 U.S.C. § 8709(d) (FEGLIA), while IRA statutes do not. Although the absence of an express preemption clause is not dispositive, *see de la Cuesta*, 458 U.S. at 153, the contrast between ERISA's expansive preemption language and the absence of such language in the IRA statutes is persuasive as "pre-emption claims turn on Congress's intent." *Gobeille v. Liberty Mut. Ins. Co.*, 136 S. Ct. 936, 946 (2016) (alteration and citation omitted).

Despite conceding that the ERISA preemption provision does not govern IRAs, Lazar nonetheless claims that policies underlying IRAs—avoiding probate proceedings, avoiding uncertainty and potential resulting losses, and avoiding the siphoning off of funds to pay administrative, legal, and tax fees—dictate that preemption should be coextensive. Even assuming the validity of these policies, they offer no justification to preempt the ROD statute because there is no underlying conflict between the ROD statute addressing *who* receives benefits and the IRA regulations mandating *how* those benefits are distributed.

### c. *Debickero* Does Not Mandate Distribution to Lazar

Lazar additionally relies on *Charles Schwab & Co. v. Debickero*, 593 F.3d 916 (9th Cir. 2010), to assert that federal regulations mandate distribution of the IRA to her. This over-reads *Debickero*. In *Debickero*, the IRA custodian filed an interpleader action to determine whether the surviving spouse or the adult children designated as beneficiaries were entitled to the IRA. *Id.* at 917–18. The surviving spouse claimed that ERISA regulations mandating distribution to a surviving spouse should apply to IRAs, but we rejected that argument, holding the regulations insufficient to overcome the beneficiary designation made on an IRA by the decedent. *Id.* at 917–22. Contrary to Lazar's assertion that federal law mandates any particular distribution outcome, we made clear that IRA regulations "leave the designation of beneficiaries to the individual account holder." *Id.* at 922.

## III.     Contracts Clause Challenge

### a. The District Courts Erred When They Denied Lazar Had Standing

The Contracts Clause prevents any state from passing a law impairing the obligation of contracts. *See* U.S. Const. art. I, § 10. The crux of Lazar's claim is that Arizona's ROD statute violates this constitutional provision by interfering with her contractual rights.

The Arizona district court cited the California district court's prior order denying standing to raise the Contracts Clause challenge as the law of the case and stated that it would have reached the same conclusion for the same reasons. The California district court held that Lazar lacks

standing to challenge the application of the ROD statutes because she possessed only an expectation interest in IRA. This conflated standing with the merits. To have standing, a party must have suffered an injury "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010). Arizona's ROD statute operated to extinguish Lazar's valid expectancy interest in the IRA—an injury which is actual, concrete, and particularized. She challenges the constitutionality of the ROD statute, and a ruling in her favor would redress her injury because invalidation of Arizona's ROD statute would entitle her to the IRA funds. This is sufficient to confer standing.

### b. Lazar's Contracts Clause Challenge Fails on the Merits

Because the lower courts addressed the merits and the issue was fully briefed, we too proceed to the merits of Lazar's Contracts Clause challenge. The question of whether the operation of an ROD statute violates the Contracts Clause is an issue of first impression in this circuit. In conducting a Contracts Clause analysis, we first ask if the change in state law has "operated as a substantial impairment of a contractual relationship." *Gen. Motors Corp. v. Romein,* 503 U.S. 181, 186 (1992) (internal quotation marks omitted). "This inquiry has three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." *Ibid.* If a substantial impairment is found, we then assess the significance of the State's justification and the legitimacy of the public purpose behind the law, such as "the remedying of a broad and general social or economic problem." *Energy Reserves Grp. v. Kan. Power & Light Co.*,

459 U.S. 400, 411–12 (1983).  We then look to whether the change in applicable law is based on reasonable conditions and is appropriate to achieve the stated public purpose.  *Id.* at 412.  Courts generally defer to the judgment of state legislatures as to both necessity and reasonableness so long as the state itself is not a contracting party.  *Id.* at 412–13.

### (1) Divergent Authority: *Whirlpool* and *Stillman*

The Eighth Circuit has held Oklahoma's ROD statute unconstitutional as applied to a life insurance policy. *Whirlpool Corp. v. Ritter*, 929 F.2d 1318, 1323 (8th Cir. 1991).  The Eighth Circuit construed the life insurance contract to contain a term that the insurance company would pay the decedent's chosen beneficiary.  *Id.* at 1322.  The court therefore determined that when operation of the ROD statute amended the beneficiary, Oklahoma substantially impaired the decedent's contract with the insurance company.  *Ibid.*  In its reasonableness analysis, the Eighth Circuit found Oklahoma's justification legitimate but insufficient for retroactive application, citing the possibility that the decedent did not desire to revoke his ex-wife's beneficiary status as evidence of constitutional infirmity.  *Id.* at 1323.  The Eighth Circuit reasoned that the possibility of the decedent's reaffirming his ex-wife as beneficiary after divorce bolstered its conclusion—just as an individual could not be presumed to know he must change beneficiary status after a change in family arrangements (the rationale behind ROD statutes), it is also unreasonable for people to be required to investigate positive changes in the law enacted after they make beneficiary designations.  *Ibid.*  On that basis, the court found it inappropriate and unreasonable to apply the ROD statute retroactively in light of the statutory purpose of effectuating donor intent.  *Ibid.*

In contrast, the Tenth Circuit has upheld the constitutionality of Utah's ROD to an annuity, finding no contractual impairment had occurred. *Stillman v. Teachers Ins. & Annuity Ass'n Coll. Ret. Equities Fund*, 343 F.3d 1311, 1322 (10th Cir. 2003). The Tenth Circuit conceptualized the annuity as having both contractual and donative transfer elements. *Ibid*. The contractual elements were those between the annuity company and the annuitant—to fund the annuity and pay as directed by the annuitant—and the Contracts Clause would only be violated if the state statute interfered with those elements. The donative transfer element was naming the beneficiary. *Ibid*. The Tenth Circuit characterized the annuity company as an escrow-agent, and because its obligation to pay the proceeds of the annuity was not impacted by the operation of Utah's ROD statute, there was no violation of the Contracts Clause. *Ibid*. Because it found no significant contractual impairment, the Tenth Circuit did not address the state's justification for enacting the legislation.

### (2) Lazar's Interest Never Vested so Her Contracts Clause Challenge Fails

We agree with the *Stillman* court and conclude that no substantial contractual impairment occurred through application of Arizona's ROD statute to the IRA, and we find there was no violation of the Contracts Clause. Because Lazar never possessed a vested contractual right, she suffered no contractual impairment. *See Dodge v. Bd. of Educ. of City of Chicago*, 302 U.S. 74, 80 (1937) (holding that Contracts Clause challenge failed in the absence of vested contractual rights). The Decedent's contract with Schwab specified that Schwab would pay his chosen beneficiary in the event of his death. The beneficiary designation itself was not a contractual term. The IRA

specifically provided that the Decedent could alter his beneficiary designation at any time and for any reason, so no third-party rights to the IRA could vest until his death.  And, as a citizen of Arizona, the Decedent was governed by its law mandating the automatic revocation of any designation of a former spouse through operation of the ROD statute.  The Decedent was free to reaffirm Lazar as his designated beneficiary but chose not to do so.  Thus, Lazar's expectancy interest, which could not vest until the death of the Decedent, was extinguished upon divorce and never vested.  Finding no substantial impairment to have occurred, we need not assess the legitimacy of Arizona's justification for its ROD statute.

## IV. Venue Transfer Based on a Lack of Personal Jurisdiction

The California district court transferred this action to the District of Arizona under 28 U.S.C. § 1406(a) on the grounds that it lacked personal jurisdiction over the Estate.  Lazar argues that the Estate waived any objection to personal jurisdiction in California by moving to dismiss Lazar's cross-claim and not Schwab's counterclaim, and that in any event, the Estate's contacts with California were sufficient to establish personal jurisdiction in California.  We conclude that the California district court did not abuse its discretion in transferring the case to Arizona.

### a. Potential Waiver of the Personal Jurisdiction Defense

Lazar posits that the Estate waived any personal jurisdiction defense because it did not move to dismiss Lazar's cross-claim until after Schwab's counterclaim had already been dismissed, arguing that the Estate should have challenged Schwab's counterclaim under Federal Rule of

Civil Procedure 12(b)(2) and not in response to Lazar's cross-claim.  Because Schwab was dismissed from the case before the Estate filed its renewed motion to dismiss, Lazar argues, the Estate waived any personal jurisdiction defense.

Generally, waiver of the defense of personal jurisdiction requires a showing of conduct inconsistent with raising or maintaining the defense.  *See, e.g.*, *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1318–19 (9th Cir. 1998).  The California district court found that there were five occasions when the Estate could have waived its personal jurisdiction defense and upon each of those occasions the defense was expressly preserved.  It therefore found the Estate had complied with its obligation under Federal Rule of Civil Procedure 12(h)(1) to raise a personal jurisdiction defense at the earliest stage possible.

The cases upon which Lazar relies do not demonstrate that the California district court abused its discretion.[1]  One case even expressly recognized that a personal jurisdiction defense remains viable when the cross-claim defendant (here the Estate) has not waived personal jurisdiction.  *See United States v. All Right, Title & Interest in Contents of Following Accounts at Morgan Guar. Trust Co. of N.Y.*, No. 95 CIV. 10929 HB THK, 1996 WL 695671, at *13 (S.D.N.Y. Dec. 5, 1996).  In sum, these cases provide more support to the Estate than to Lazar.

---

[1] *Lesnik v. Public Industrial Corp.* involved a challenge to improper venue and not to personal jurisdiction.  144 F.2d 968, 977 (2d Cir. 1944). *Peterson v. Highland Music Inc*. focused on the possibility of "sandbagging" by not raising the issue of personal jurisdiction until later stages of proceedings and was concerned with preventing a litigant from engaging in strategic behavior to test the waters of litigation, something which did not occur here.  140 F.3d 1313, 1318 (9th Cir, 1998).

### b. California Cannot Properly Exercise Jurisdiction over the Estate

Lazar contends that the Estate's contacts with California were sufficient to confer specific personal jurisdiction. Lazar cites four different contacts with California: (1) the Decedent opened the IRA with Schwab, a California corporation; (2) the Decedent made an average of 124 trades per year in the account from 1992 to 2012; (3) the Decedent made Schwab his "agent and attorney-in-fact" for purposes of buying and selling on the account; and (4) the Estate sent a letter to Schwab from California. The California district court found that the first three contacts were not sufficiently "substantial" or "continuous and systematic" to confer general personal jurisdiction, *see Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984), and found that the fourth contact insufficient to confer specific personal jurisdiction.

Lazar does not assert on appeal that there was general personal jurisdiction. She argues only that the California contacts established specific personal jurisdiction. We utilize a three-part test when making specific personal jurisdiction determinations:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.* 374 F.3d 797, 802 (9th Cir. 2004). Purposeful availment and purposeful direction are distinct inquiries. The personal availment inquiry asks if the defendant "purposefully avail[ed] [himself] of the privilege of conducting activities in the forum State, thus invoking the benefits and protections of its laws." *Ibid.* The purposeful direction inquiry asks if the defendant directed an action at the forum state such that personal jurisdiction could be exercised even without physical contacts with the forum. *Id.* at 803.

In its transfer order, the California district court focused on the purposeful direction test. Purposeful direction requires a defendant to have "(1) committed an intentional act, (2) expressly aimed at the forum state, [and] (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (quoting *Schwarzenegger*, 347 F.3d at 803). The first three contacts are insufficient to constitute purposeful direction, as none of them was expressly aimed at California and any harm to the IRA would be felt in Arizona where the decedent and Lazar were domiciled.

The Estate's sending of a demand letter to Schwab was an intentional act. *See, e.g.*, *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000) (finding that sending a letter constituted an intentional act). But, as the California district court found, the act of sending the letter was aimed at Arizona and not California. We look to who would suffer the harm and where the harm would be

felt when determining whether a defendant expressly aimed his activities at the forum state. *See Metro. Life Ins. Co. v. Neaves*, 912 F.2d 1062, 1065 (9th Cir. 1990) (holding that the place of incorporation of the letter's recipient is not dispositive but instead the focus is on where the letter's effects would be felt). The letter was sent to a Schwab address in Arizona, and any harm which Lazar would suffer would occur in Arizona, where she resides, and not in California.

The California district court also did not abuse its discretion when it conducted a purposeful availment analysis in assessing two additional contacts with California which Lazar claimed conferred specific personal jurisdiction over the Estate. The first contact is the choice-of-law provision in the IRA stipulating that California law governs in the absence of applicable federal law. Because it is not essential that the state whose law will be applied to a lawsuit exercise jurisdiction over the litigation, this contact did not confer specific personal jurisdiction. *See Shaffer v. Heitner*, 433 U.S. 186, 215 (1977). The second contact is Kroncke's domicile in California, but this is immaterial as the Estate in located in Arizona. It is the Estate which is the party to this lawsuit, so Kroncke's domicile does not impact the jurisdictional analysis. *See Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 374 (5th Cir. 2003).

## V. Lazar's Dormant Commerce Clause Claim Was Waived

Lazar concedes that she failed to specifically allege a violation of the dormant Commerce Clause in her SAACC. In seeking to bring this challenge on appeal, she relies on her general allegation below that ROD statutes are unconstitutional for reasons "including but not limited to" a violation of the Contracts Clause and conflict preemption.

But, Federal Rule of Civil Procedure 5.1 requires a party challenging the constitutionality of a state statute to "file a notice of constitutional question stating the question and identifying the paper that raises it" so that a state attorney general can intervene if desired to defend the statute.  Lazar filed such a notice, but specified only the Contracts Clause and conflict preemption as grounds for her constitutional challenge.

Lazar now asserts before this court that her Commerce Clause argument should be considered anyway because it was briefed and alternatively addressed on the merits by the district court, meeting the standard that an "argument must be raised sufficiently for the trial court to rule on it." *In re E.R. Fegert, Inc.,* 887 F.2d 955, 957 (9th Cir.1989).  But in *In re E.R. Fegert, Inc.* we determined that the bankruptcy court "could have" ruled on the applicability of a relevant Supreme Court decision because a party had actually argued its applicability. *See ibid.*  Lazar also cites *Cmty. House, Inc. v. City of Boise*, where we considered an Establishment Clause challenge when it was disputed whether the claim had been properly raised before the district court but the district court considered and resolved the issue.  490 F.3d 1041, 1054 (9th Cir. 2007).  In that case, the district court did not find waiver; instead it considered and resolved the issue. *Ibid.*  Here, by contrast, the district court expressly found Lazar's Commerce Clause claim to have been waived. Neither of those precedents rescues Lazar.

## VI.    Stay of Discovery

The district court stayed discovery pending resolution of the Estate's motion to dismiss the SAACC.  District courts orders controlling discovery are reviewed for an abuse of discretion. *Alaska Cargo*, 5 F.3d at 383.  Lazar argues that she should have been allowed discovery into whether the

Decedent redesignated her as the IRA beneficiary after their divorce. No discovery was necessary, however, as Arizona law is clear that there cannot be substantial compliance with the redesignation requirement, *Lamparella*, 109 P.3d at 967, and there is no dispute that the Decedent failed to change the designation.

Lazar also argues that discovery should have proceeded because of a purported 2001 designation which made the Marital Trust the contingent beneficiary of the IRA. Lazar did not argue below either that the Estate is not the default beneficiary of the IRA or that she has title to the IRA through some other post-divorce instrument, and Schwab identified only Lazar's and the Estate's claims in its interpleader. The district court therefore did not abuse its discretion in denying discovery on this issue pending resolution of the Estate's motion to dismiss.

## CONCLUSION

For the foregoing reasons, although we disagree with the district court's holding that Lazar lacks standing to raise her Contracts Clause challenge, we affirm the judgment below.

**AFFIRMED**.