# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1441

_____

Kristina Greene, Joan Spiczka; Paula Fleming; Patrick Fleming; Cindy
Lindbloom; Maria Zimmerman

*Plaintiffs - Appellants*

v.

Minnesota Governor Mark Dayton, in his official capacity as the Governor of the
State of Minnesota; Josh Tilsen, in his official capacity as Commissioner of the
Bureau of Mediation Services; Lucinda Jesson, in her official capacity as
Commissioner of the Minnesota Department of Human Services; SEIU Healthcare
of Minnesota

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: October 21, 2015
Filed: December 3, 2015

_____

Before LOKEN, MURPHY, and COLLOTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

The Minnesota legislature enacted the Individual Providers of Direct Support
Services Representation Act on May 20, 2013 to allow homecare providers for

Medicaid program participants to unionize. Six homecare providers brought this action against Governor Mark Dayton, Bureau of Mediation Services ("BMS") Commissioner Josh Tilsen, Minnesota Department of Human Services Commissioner Lucinda Jesson, and SEIU Healthcare of Minnesota ("SEIU"), alleging that the law is unconstitutional. The providers argue that the statute violates the Supremacy Clause, tortiously interferences with their preexisting contracts, and violates the Contract Clause of the United States and Minnesota Constitutions. The district court[1] dismissed the case, and the providers now appeal. We affirm.

I.

The Individual Providers of Direct Support Services Representation Act ("the Act") allows homecare providers for Medicaid program participants to seek union representation under the Public Employment Labor Relations Act ("PELRA"). See generally Minn. Stat. §§ 179A.54, 179A.06. Solely for collective bargaining purposes, homecare providers are considered executive branch state employees. Id. § 179A.54, subd. 2. Although individual providers may form a union under PELRA, they are not required to become members of the union or pay union dues. See id. § 179A.06, subd. 2; id. § 179A.13, subds. 1, 2(1), 3(1).

Medicaid program participants hire and fire their own individual providers, but the state has always paid these providers. See id. § 256B.0711, subds. 1(b), 1(d). Before passing the Act the commissioner of human services established compensation rates, payment practices, and benefit terms for individual providers. Id. subd. 4(c). The process required under the new Act is different. It compels the state to meet and negotiate with the providers' elected union to determine the terms and conditions of

---

[1] The Honorable Michael J. Davis, then Chief Judge, United States District Court for the District of Minnesota.

the providers' employment.  Id. § 179A.54, subd. 3.  On August 26, 2014 the SEIU was elected and certified as the providers' exclusive representative.

Six homecare providers, Kristina Greene, Joan Spiczka, Paula Fleming, Patrick Fleming, Cindy Lindbloom, and Maria Zimmerman (collectively "the providers"), filed this lawsuit against Governor Mark Dayton, BMS Commissioner Josh Tilsen, Minnesota Department of Human Services Commissioner Lucinda Jesson, and the SEIU.  Spiczka provides homecare for Medicaid program participants who have disabilities.  The other five appellants provide homecare for their own children who are also Minnesota Medicaid program participants.  The providers claim that the Act: (1) violates the Supremacy Clause because the National Labor Relations Act ("NLRA") preempts state regulation of domestic workers; (2) tortiously interferes with their right to contract individually with program participants; and (3) violates the Contract Clause of the United States and Minnesota Constitutions.  The district court dismissed all of these claims.

## II.

We review de novo the grant of a motion to dismiss, "taking all well pleaded factual allegations in the complaint as true and making all reasonable inferences in favor of the plaintiff."  Cormack v. Settle-Beshears, 474 F.3d 528, 531 (8th Cir. 2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

The providers first argue that the district court erred in dismissing their Supremacy Clause claim.  They state that Congress intended to preempt states from the regulation of domestic service workers by exempting domestic service workers from the NLRA.  According to the Machinists preemption doctrine, "congressional intent to shield a zone of activity from regulation is usually found only implicit[ly]

in the structure of the Act, drawing on the notion that [w]hat Congress left unregulated is as important as the regulations that it imposed." Chamber of Commerce of U.S. v. Brown, 554 U.S. 60, 68 (2008) (alterations in original) (internal quotations and citation omitted). Although Congress exempted domestic service workers from the NLRA, Congress did not demonstrate an intent to shield these workers from all regulation. Rather, Congress merely concluded that domestic service worker disputes were not significant enough to regulate federally because they did not impact national "labor peace." See Harris v. Quinn, 134 S. Ct. 2618, 2640 (2014).

Since Congress expressly exempted both agricultural and domestic service workers from the NLRA, cases analyzing the legality of state agricultural worker regulations are instructive here. See 29 U.S.C. § 152(3). The Ninth and Seventh Circuits have determined that "federal policy is indifferent" to the regulation of agricultural workers, and therefore "states remain free to legislate as they see fit." United Farm Workers of Am., AFL-CIO v. Ariz. Agric. Emp't Relations Bd., 669 F.2d 1249, 1257 (9th Cir. 1982) (internal quotation marks omitted); see Villegas v. Princeton Farms, Inc., 893 F.2d 919, 921 (7th Cir. 1990). Although the providers argue that the agricultural and domestic service exemptions are distinguishable because Congress debated at length only the agricultural labor exemption, this distinction is immaterial. The two groups of employees are treated identically in the text of the statute, and we do not draw an inference from silence in a statute's legislative history. See Harrison v. PPG Indus., Inc., 446 U.S. 578, 592 (1980). The district court thus properly dismissed the providers' Supremacy Clause claim because the NLRA does not preempt Minnesota's regulation of domestic service workers.

The providers unsuccessfully try to dovetail a state preemption argument into their federal preemption claim. They argue that the Act is preempted by an older Minnesota statute which excludes domestic service workers from its definition of "employees" permitted to bargain collectively. See Minn. Stat. § 179.01, subd. 4. As

for the state defendants, this argument fails as a matter of law because the Eleventh Amendment bars our court from ordering state officials to conform their conduct to state law. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 106 (1984). The providers' state preemption argument against the SEIU also fails because even if the state laws conflict "irreconcilabl[y]," the law passed most recently by the legislature controls and thus the Act trumps the older statute's definition of "employees." See Minn. Stat. § 645.26, subd. 4.

The providers contend that the district court also erred in dismissing their tortious interference claim because the defendants forced them to join the union and prevented them from bargaining directly with Medicaid program participants. The Act however does not require individual providers to join the union. See id. § 179A.06, subd. 2; id. § 179A.13, subds. 1, 2(1), 3(1). To the extent that the providers argue they can no longer bargain directly with program participants, their tortious interference claim fails against the SEIU. That is because even assuming that they allege a sufficiently concrete and particularized injury to have standing, they do not plausibly allege that the union ever acted without justification, a requisite element of tortious interference. See Furlev Sales & Assoc., Inc. v. N. Am. Auto. Warehouse, Inc., 325 N.W.2d 20, 25 (Minn. 2002). "Generally, a defendant's actions are justified if it pursues its legal rights via legal means." Noble Sys. Corp. v. Alorica Central, LLC, 543 F.3d 978, 983 (8th Cir. 2008). The SEIU's actions in this case were justified as a matter of law because under the Act it had the right to seek certification as the exclusive bargaining representative and to negotiate the providers' employment terms. The district court also properly dismissed the providers' tortious interference claim against the state defendants because federal courts are unable to order state officials to conform their conduct to state law. See Pennhurst, 465 U.S. at 106. The district court thus properly dismissed the entire tortious interference claim.

Finally, the providers contend that the district court erred in dismissing their federal and state constitutional Contract Clause claims. Both constitutions prohibit

a state from passing a law which impairs the obligation of contracts. U.S. Const. art. 1, § 10, cl.1; M.N. Const. art. I, § 11. Under both constitutions a law unconstitutionally impairs a contract only if it substantially impairs a contractual relationship, and either does not serve a significant and legitimate public purpose, or is not reasonably appropriate to accomplish that purpose. Jacobsen v. Anheuser-Busch, Inc., 392 N.W.2d 868, 872 (Minn. 1986); Energy Reserves Grp., Inc. v. Kansas Power & Light Co., 459 U.S. 400, 411–13 (1983). The defendants contend that the providers' constitutional claims fail because the appellants lack standing and they do not allege which preexisting contracts terms are impaired by the Act.

The providers do not sufficiently allege substantial impairment of a contractual relationship. They claim that the Act impairs their contractual relationships with the Medicaid program participants whom they serve because it deprives them of the right to "deal directly" with their "employers," and it negates their previously negotiated terms and conditions of employment. Even before the Act was passed, however, the commissioner of human services set compensation rates, payment practices, and benefit terms for providers. See Minn. Stat. § 256B.0711, subd. 4(c). Although the commissioner could permit "variations based on traditional and relevant factors otherwise permitted by law," the providers did not have authority to negotiate compensation or benefits terms with program participants. See id. subd. 4(c)(1). The district court thus properly dismissed the providers' Contract Clause claims.

For these reasons the judgment of the district court is affirmed.

_____

-6-